## THE STATE v. BURKS, *Appellant.*

### Division Two, February 4, 1896.

1. **Criminal Practice**: LOST INDICTMENT: APPEAL.  A copy of a lost indictment presented to the clerk of the trial court by the prosecution and by him incorporated into the record does not thereby become a part thereof, and will not be so regarded on appeal.

2. ———: ———: ———.  Where an indictment is lost or destroyed without the knowledge or connivance of the defendant, and he desires to have its sufficiency reviewed on appeal, he must, by appropriate steps, have it supplied in the circuit court.

3. ———: ORAL INSTRUCTION: NEW TRIAL.  The objection that the failure of the jury to assess the punishment was caused by oral instructions given to the jury through the sheriff can not be reviewed on appeal where it was not made a ground for a new trial in the motion therefor.

4. ———: VERDICT: AFFIDAVITS OF JURORS.  Affidavits of jurors that they agreed to a verdict assessing no punishment, only on the assurance of the foreman that the court would reduce the punishment required by the instructions are incompetent to impeach the verdict.

5. ———: INSTRUCTIONS.  Instructions embraced in those already given are properly refused.

6. ———: WITNESS: CONTRADICTORY STATEMENTS.  A party can not, either in a civil or criminal case, discredit or impeach his own witness by evidence of contradictory statements previously made, unless he was entrapped or misled by some artifice or by some statement made to him or by someone on whom he had a right to rely, or unless there is an express statute authorizing the admission of such evidence.

7. ———: VERDICT: CONFLICTING EVIDENCE: APPEAL.  A verdict rendered on conflicting evidence and approved by the trial court will not be disturbed on appeal.

*Appeal from Boone Circuit Court.*—HON. JOHN A. HOCKADAY, Judge.

AFFIRMED.

*Ev. M. Bass* for appellant.

(1) No person should be convicted as a felon unless upon a good and sufficient indictment found and returned into court by a grand jury duly impaneled, charged and sworn, and his guilt otherwise ascertained and determined in accordance with all due forms of law. The record in this case shows the loss or destruction of the original indictment pending the trial, and also the attempted substitution in its stead of a new one by the prosecuting attorney, after the appeal was granted and the bill of exceptions duly allowed and signed by the court. (2) A lost or destroyed indictment may be supplied by the court, under proper procedure and proof during the term and before appeal granted, but not afterward by the prosecuting attorney of his own volition, and without affidavit or evidence otherwise that it is a true copy. *State v. Simpson*, 67 Mo. 647; *State v. Smith*, 71 Mo. 45. (3) The special entry of the clerk (referred to above) shows that the new or pretended indictment in this case was never presented to the court by the foreman of the grand jury and filed as a record, nor is it now a part of the record in the case, nor has it the earmarks of a good and valid indictment. R. S. 1889, sec. 4092; *State v. Freeman*, 21 Mo. 481, 483; *State v. Lord*, 118 Mo. 1. (4) The jury were misled by the oral instruction of the court into returning a verdict without assessing the punishment. The affidavits of the jurors were competent to impeach the verdict. (5) The defendant should have been permitted under the plea of surprise and deception to treat the witness Maud Bentley as an adverse and hostile witness, and to show that her adverse testimony was a surprise and unexpected and was the result of improper influence pending the trial.

The right to impeach one's own witness under such circumstances should never be denied a defendant charged with a felony. 1 Thompson on Trials, sec. 512; *McDaniel v. State*, 53 Ga. 253. (6) " The supreme court will interfere and set a verdict aside where it is the result of prejudice, passion, and partiality;" " and in criminal cases this court has never abdicated the right they possess to overturn verdicts which are not based upon the cornerstone of substantial justice." *State v. Primm*, 98 Mo. 368. "Appellate courts will not hesitate to review the whole evidence in a cause where the verdict of a jury is so strongly opposed to all reasonable probabilities as to be the manifest result of mistake, passion, or prejudice." *Mauerman v. Railroad*, 41 Mo. App. 348; *Adler v. Wagner*, 47 Mo. App. 25; *Lovell v. Davis*, 52 Mo. App. 342. (7) The overwhelming testimony in this case shows the defendant entered the house through an open door and with a different intent than as charged; and was entitled to a verdict of acquittal on the charge of burglary. *State v. Kennedy*, 16 Mo. App. 287, and cases cited; *State v. Tutt*, 63 Mo. 595.

*R. F. Walker*, attorney general, and *J. L. Stephens*, prosecuting attorney, for the state.

(1) In the absence of proof to the contrary it will be presumed that the copy of the indictment was a correct one. *Long v. People*, 135 Ill. 435; *Hubbard v. State*, 24 S. W. Rep. (Tex.) 648. (2) Even in cases where the trial is not concluded where the loss of the indictment is discovered, the court may proceed upon a true copy being substituted by the prosecuting attorney. *State v. Rivers*, 58 Iowa, 102; *Miller v. State*, 40 Ark. 488; *State v. Shank*, 79 Iowa, 47; *State v. Gardner*, 13 Lea. 134; *Bradford v. State*, 54 Ala. 230;

*Buckner v. State,* 56 Ind. 208; *Millar v. State,* 2 Kan. 174. (3) A verdict can not be impeached by the affidavit of jurors. This has been held in an unbroken line of decisions by this court. *State v. Wood,* 124 Mo. 412; *State v. Robinson,* 117 Mo. 649; *State v. Schaeffer,* 116 Mo. 96; *State v. Dusenberry,* 112 Mo. 277. Nor can a verdict be impeached by the affidavit of a person who derives his information from a juror. *State v. Schaeffer, supra.* (4) The instructions properly declared the law and presented every phase of the case under the evidence. They are not subject to objection. *State v. McCaskey,* 104 Mo. 644. (5) Where a jury returns a verdict of guilty as charged, but do not fix the punishment, the court is authorized to assess and declare the same. R. S. 1889, sec. 4230; *State v. Dennison,* 108 Mo. 541; *State v. Foster,* 115 Mo. 448.

GANTT, P. J.—At the November term, 1894, of the circuit court of Boone county the defendant was indicted. We are informed by his counsel that the indictment, which was lost during the trial or since, contained two counts, one charging him with burglary with intent to rape a minor under the age of fourteen years, and the other, with a burglarious assault with intent to rape a minor under the age of fourteen years. At the same term defendant filed his motion to quash and it was sustained as to the second count and overruled as to the first. The cause was continued to the March term, 1895. On the fourth day of March, 1895, the cause came to trial and resulted in a general verdict of guilty without assessing any punishment. A motion for new trial was filed and overruled and the defendant's punishment assessed by the court at ten years in the penitentiary. From that sentence this appeal is prosecuted.

I.   The clerk certifies in his transcript that "the indictment mysteriously disappeared during the time the jury was trying the case and has never been found;" that since the adjournment of the court the prosecuting attorney had furnished him with a copy of the indictment and asked its insertion in the transcript and defendant had objected to his so doing because the indictment could not be thus supplied but that he did insert said copy so furnished him by the prosecuting attorney.

The clerk had no right to incorporate the paper purporting to be a copy of the indictment in the record even though requested by the prosecuting attorney and it can not be treated as a part of the record.   A lost indictment, like any other record, may be supplied by the court of whose record it constitutes a part.   Of this there can be no doubt.   *State v. Simpson*, 67 Mo. 647; *State v. Smith*, 71 Mo. 45.   But it is one thing for a court to order a pleading substituted for one that is lost after a hearing and after being satisfied that the substituted copy is the same or substantially the same as that which has been lost or destroyed, and quite another for one of the parties in vacation or even in term time to substitute a copy of a lost pleading without notice to his adversary and without the knowledge or permission of the court whose record is to be thus affected.   The so-called indictment incorporated in this record can not be considered by us.

That an indictment was found and filed; that one count of it was quashed; that defendant was duly arraigned on the remaining count and pleaded not guilty; that defendant was tried and convicted on that indictment, there can be no doubt.   He now seeks to have that indictment declared insufficient on this appeal.   In the absence of any evidence of its form or allegations it must be presumed that it was a valid and

sufficient charge of the offense of which he was convicted. It follows that it was the duty of the defendant to have the indictment certified to this court and if lost or destroyed without his knowledge or connivance, if he desired to have this court pass upon its sufficiency, he should have taken appropriate steps to supply it in the circuit court, which had the power to do so even at a subsequent term. The circuit court of Boone county is required to hold a term on the second Monday in June of each year. Defendant was convicted and sentenced in March, 1895. The court extended the time for filing the bill to the June term, 1895. In preparing his record counsel was either apprised of the loss of the indictment, or by ordinary care could have been, and the indictment could have been supplied at the same term at which he filed his exceptions, but he made no effort whatever to do so. He who asserts error must show it.

II. It is now asserted that the jury were deceived into disobeying the instructions of the court by failing to assess the amount of the defendant's punishment because of oral communications or instructions of the jury by the sheriff to the foreman and by the foreman to the jury. A charge of so grave a character against a judge should not be made by counsel in an appellate court without having given the judge an opportunity to refute it in his own court. The motion for new trial does not contain any such a charge as this and hence it is not open to review. It seems to be based entirely upon an affidavit of the sheriff in charge of the jury to the effect that pending the deliberations of the jury the foreman called to him and desired him to say to the court they could not agree upon a verdict owing to their inability to agree upon the length of the term of punishment and he desired an instruction for a less punishment. The court told him to inform the foreman that he had fully instructed them under the law. What

connection this had with the failure of the jury to agree upon a term of punishment we are unable to see.   The affidavit of the four jurors that they only agreed to the verdict because the foreman assured them that the court could and would reduce the punishment as stated in his instructions was clearly incompetent to impeach the verdict.

III.   The court correctly defined a reasonable doubt and there was no error in not giving another instruction on the same subject.

IV.   To sustain his defense that he had entered the house of the prosecuting witness in pursuance of an agreement with one Maud Bentley, a negro woman who had stayed in Rachel Cowden's house with her children during a visit shortly prior to the time of the alleged burglary, and had not forcibly entered for the purpose of ravishing the girl Emma Cowden, defendant called said Maud Bentley as a witness.   She denied having had the conversation and agreement with defendant which he sought to prove.   She denied that she slept at Rachel Cowden's house that night.   She was fully corroborated by Rosa McAfee, another of defendant's witnesses, as to the fact of sleeping at Rosa McAfee's that night.   She was asked if she did not state to one or more parties (not naming them) in Rocheport after the preliminary trial, and in Columbia during the trial, that Burks did ask and tried to pursuade her to consent to his coming to her room that night and that she told him not to come and had refused to consent to anything of the kind and she answered she did not.

At this point the prosecuting attorney objected to questions by defendant's counsel laying a foundation to impeach his own witness and for the reason that his questions were leading.   Thereupon counsel for defendant asked to be allowed to treat the witness as adverse

and hostile, to prove her answers were wholly different from her declarations theretofore made, and from what defendant and his counsel had been informed she would state, which offer the court refused.

Few questions in the practical administration of justice have given rise to a more pronounced difference of opinion between English judges than whether it be competent for a party to prove that a witness called by him, who has given evidence against him, has made at other times a statement contrary to that made by him at the trial.    It is conceded on all sides that such a statement can not be admitted as proof of the facts therein asserted, and if admissible at all is permitted solely for the purpose of discrediting or throwing suspicion upon his testimony which is in conflict with such previous statements.    Perhaps in no case have the reasons for and against the rule been more clearly stated than in *Wright v. Beckett*, 1 M. & Rob. 414, (1833) by Lord Chief Justice DENMAN asserting the admissibility of such statements, and by Baron BOLLAND denying their competency.

Phillipps in his work on Evidence [5 Ed.], volume 2, page 995, after a careful and critical review of the cases, while casting his own weight in favor of Lord DENMAN's view, says: "It must be admitted, however, that the weight of modern *authority* is in opposition to the opinion, reasoning, and arguments of Lord DENMAN, above stated."

Professor Greenleaf [15 Ed.], volume 1, sec. 444, says: "Whether it be competent for a party to prove that a witness whom he has called, and whose testimony is unfavorable to his cause, *had previously stated the facts in a different manner*, is a question upon which there exists some diversity of opinion.    On the one hand, it is urged that a party is not to be sacrificed to his witness; that he is not represented by him, nor

identified with him; and that he ought not be entrapped by the arts of a designing man, perhaps in the interest of his adversary. On the other hand, it is said, that to admit such proof would enable the party to get the naked declarations of a witness before the jury, operating, in fact, as independent evidence; and this, too, even where the declarations were made out of court, by collusion, for the purpose of being thus introduced. But the weight of authority seems in favor of admitting the party to show that the evidence has taken him by surprise, and is contrary to the examination of the witness preparatory to the trial, or to what the party had reason to believe he would testify; or, that the witness has recently been brought under the influence of the other party, and has deceived the party calling him. For it is said that this course is necessary for his protection against the contrivance of an artful witness; and that the danger of its being regarded by the jury as substantive evidence is no greater in such cases than it is where the contradictory declarations are proved by the adverse party."

This conflict among judges was settled in England by an act of parliament known as "The Common Law Procedure Act of 1854" (17 & 18 Victoria, ch. 125, sec. 22) which provides that, "a party producing a witness shall not be allowed to impeach his credit by general evidence of bad character, but he may, in case the witness shall in the opinion of the judge prove adverse, contradict him by other evidence, or, by leave of the judge, prove that he has made at other times a statement inconsistent with his present testimony; but before such last-mentioned proof can be given, the circumstances of the supposed statement, sufficient to designate the particular occasion, must be mentioned to the witness, and he must be asked whether or not he has made such statement."

The same statute has been adopted in Massachusetts (Pub. Stat., chap. 169, sec. 22) and virtually the same in California (Code Civil Procedure, secs. 2049 and 2052).

The Massachusetts statute was construed in *Ryerson v. Abington*, 102 Mass. 526 and *Com. v. Thyng*, 134 Mass. 191, and it was held that in order to render evidence of contradictory statements of one's own witness competent it must be shown that the statute had been complied with and it was not sufficient to merely call the attention of the witness to the person to whom the supposed statement was made with no attempt to designate time or place and no suggestion of any reason for not specifying them. There must have been such a specifying the circumstances as to designate the particular occasion.

We have no statute on the subject in this state but the question has been settled by adjudications of this court.

In *Brown v. Wood*, 19 Mo. 475, Judge Scott for the whole court ruled that, "a party can not discredit his own witness, that is, he can not introduce evidence whose sole purpose is to discredit his witness; but when he introduces a witness in order to establish a fact, and that witness disappoints him, and fails to prove it, the party is not precluded from proving the fact by another witness, although, in so doing, he may show the first witness guilty of perjury." In *Chandler v. Fleeman*, 50 Mo. 239, Wagner, Judge, announced the same rule in a case where a party had called his adversaries as witnesses, and that ruling was cited and followed in *Claflin v. Dodson*, 111 Mo. 195.

In *Dunn v. Dunnaker*, 87 Mo. 597, the identical question involved in this case was again before this court and received a unanimous answer. The error assigned was that the trial court had wrongfully

excluded a portion of the deposition in which plaintiff attempted to show that the witness had made statements out of court contradictory of his testimony. This court then said there was no error in excluding said testimony, in these words: "A party introducing a witness, and thereby vouching his veracity, can not impeach his testimony, either by general evidence showing his bad character for truth, or by evidence of statements made by him out of court, contradictory of his testimony at the trial. 1 Greenleaf's Ev., sec. 442. Proof of such contradictory statements could not be allowed as evidence of their truth, and could, therefore, be offered or received for no other purpose than to destroy the credit of the witness. Authorities to the contrary may be found, but we are of the opinion that, unless the party is entrapped into offering as a witness one who testifies contrary to what he, or others upon whom the party had a right to rely, assured him his testimony would be, the evidence of contradictory statements made by him is not admissible. 1 Greenleaf's Ev., sec. 444. No such element of surprise or imposition exists in this case."

This view is generally adopted in both state and federal tribunals where no statute controls. *State v. Keefe*, 54 Kan. 197; *Dixon v. State*, 86 Ga. 754; *Chism v. State*, 12 So. Rep. 852.

It has been ruled also in many of the other states that the mere failure of a witness to prove the fact for which he was called does not constitute him such an adverse or hostile witness as will justify the court in permitting a party to impeach his own witness. *Shackelford v. State*, 27 S. W. Rep. (Tex.) 8; *People v. Mitchell*, 94 Cal. 550; *Hickory v. U. S.*, 151 U. S. 303.

Accordingly it must be ruled upon the great weight of authority that a party can not, either in a civil or criminal case, discredit or impeach his own witness by

proof of contradictory statements previously made by his witness, unless he has been entrapped or misled by some artifice or statement to him or to someone upon whom the party had a right to rely, or unless there is an express statute permitting such evidence.

There was nothing showing that this witness had ever testified at a preliminary trial contrary to her evidence on the trial. Defendant made no offer to show she had ever told him she would testify as he desired her to do, nor did he name any other person to whom she stated that she would testify she had agreed to permit him to occupy her room with her at Rachel's that night. Her failure to so testify fell far short of the surprise which the law deems sufficient to permit the relaxation of the rule. In all such cases it is essential that the witness should prove adverse to the party calling him or her, and, second, that the party is surprised by such evidence. Neither by affidavit or otherwise was there any showing made of surprise or offer of any material contradictory statement to any specific person or at any special time or place. We find no error in the court's ruling on this point.

V. There was ample evidence to sustain the verdict if credited by the jury, and it was a matter peculiarly within their province to determine the reliability of the witness. No motive whatever is suggested why Rachel Cowden and her daughter should have deliberately perjured themselves as to defendant's breaking into the house and assaulting the girl; no previous ill will has been shown. They made an instant outcry, and they are corroborated by the admitted fact that at 2 o'clock in the morning the defendant had effected an entrance into her house. Certainly he denies the assault, but they as positively assert it. The jury saw them and heard their evidence and the trial judge has approved their verdict.

VI.   As to the complaint against the prosecuting attorney, it is sufficient to say it is not assigned as error in the motion for new trial and hence is not before us for review.

VII.   We are unable to discover any errors in the admission or rejection of evidence.

Upon a careful review of the case we find no reversible error and the judgment is affirmed.   SHER-WOOD and BURGESS, JJ., concur.