## C. C. CALDWELL, Appellant, v. FARMERS' & MERCHANTS' BANK OF VANDALIA, Respondent.

St. Louis Court of Appeals, February 3, 1903.

1. **Witness: IMPEACHMENT OF.** A party can not impeach the reputation of his witness at the trial of a cause.

2. **Practice, Appellate: ORIGINAL TESTIMONY.** Original testimony consisting of affidavits tending to impeach the reputation of a witness can not be considered by the appellate court. The Court of Appeals is a court of review and not of trial, and deals only with the record of the proceedings in the lower court.

Appeal from Audrain Circuit Court.—*Hon. Elliott M. Hughes,* Judge.

AFFIRMED.

*W. W. Botts* and *George Robertson* for appellants.

(1) This is an action brought to cancel a note for $1,700, and a bill of sale on forty head of cattle, given to secure it, for an accounting. The purpose of the accounting was to show that there was not only no consideration for the note, but that at the date of the execution of the note the defendant was actually indebted to the plaintiff. (2) It will be necessary for the court to review the entire record. It will disclose that the plaintiff has very bad eyesight, unable to read at all by lamplight, and with great difficulty at any time; that it was necessary for him to have some one upon whom he could rely for assistance in that regard, and that he did repose confidence in the officers of the bank and his supposed friend Bondurant, and that both proved to him a broken reed. (3) The judgment of the trial court may not be the subject of criticism from the standpoint of mercy for the ones who have taken advantage of his affliction and have ensnared and deluded the plaintiff, but from a standpoint of justice, with her sword and scales, should not be allowed to stand.

*J. D. Hostetter* and *P. H. Cullen* for respondent.

(1) While plaintiff invokes the aid of the equity side of the court to cancel his note and take an accounting, yet the defendant sues him on the very note sought to be cancelled; also on the small overdraft. These latter were law counts and were tried by the court and no instructions were asked by plaintiff, or given by the court, and no finding of facts requested in writing or made by the court, hence, there is nothing from which an appellate court can determine upon what theory the trial court found the issues on these law counts in defendant's favor. In this state of the record we insist that there is nothing for review, as to defendant's judgment, save to determine whether there was any evidence to base the judgment on, and if there was any evidence the judgment must be affirmed. Sud-

duth v. Robertson, 118 Mo. 293; Cochran v. Thomas, 131 Mo. 267. (2) With the weight of the evidence in law cases the appellate court will not concern itself. Gorman v. St. Louis Transit Co., 70 S. W. 731.

GOODE, J.—This proceeding was instituted to have cancelled a certain promissory note for $1,700, dated July 3, 1900, due four months after date, and executed by the plaintiff to the defendant on the ninth day of July; also a bill of sale on forty head of cattle executed by the plaintiff to secure said note; also for an accounting. The plaintiff, according to the petition and the proof, did business with the defendant bank for some years prior to January 1, 1898, and, as the plaintiff was a stock-dealer, his account was an active one, numerous transactions in the way of deposits, checks and loans occurring.

The ground on which the cancellation of said note and bill of sale is asked is that they were executed without consideration, plaintiff alleging that he was induced to give them by the representation of W. L. Wright, the cashier of the bank, that plaintiff had overdrawn his account to the amount of $1,700, whereas in truth his account was not overdrawn at all. Besides asking relief against said instruments, the petition attempts to state an account of the transactions between the parties from the first day of January, 1898, until July 9, 1900, alleging deposits by the plaintiff which the bank admits were made and seven deposits disputed by the bank but alleged to have been made. Plaintiff further states that he drew checks on the bank with which he was properly charged, but that he was improperly charged with other checks never drawn, so that there was a difference between the parties of $4,503.93 as to the actual state of the account.

The petition further charges that when said $1,700 note was demanded by the cashier of the bank, plaintiff was doubtful whether he owed an overdraft and

declined to execute the note until the cashier gave him a receipt against the note containing a statement that the bill of sale would not be enforced unless, on further examination of plaintiff's account, it appeared he did in fact owe the amount of the note.

The answer denied the allegations of the petition, except as to the execution of the note and bill of sale, stated at length and in detail the transactions between the parties from December, 1897, to February, 1901, and showed a balance due the bank of $76.78 for which judgment was prayed. The answer further alleged said note was given for a good consideration, was induced by no false representations, that defendant afterwards made a payment on it and executed a bill of sale of the cattle to secure it and prayed judgment for the amount of the note and the enforcement of the security.

A replication was filed denying the allegations of the answer and insisting on the truth of those made in the petition.

Many of the disputed matters in the account seem to have been cleared up by the testimony to the satisfaction of both parties so that finally plaintiff relied only on the following charges:

First. That said $1,700 note was obtained by fraud and without consideration inasmuch as plaintiff was not then indebted to the bank at all.

Second. That on January 16, 1897, plaintiff borrowed one thousand dollars from one William Wood and placed the check therefor in the bank for deposit to his credit, but without authority, the bank placed four hundred dollars to his credit and six hundred to the credit of one J. R. Bondurant.

Third. That on April 12, 1898, the bank paid said Bondurant $800 on a check drawn by him and charged the sum to plaintiff's account without the authority, knowledge or consent of the plaintiff.

Fourth. That on June 19, 1898, plaintiff drew a

check on another bank in Vandalia for $200 payable to W. L. Wright, cashier of the defendant bank in order to have said sum deposited to plaintiff's credit, but said Wright placed it to his own credit without plaintiff's knowledge or consent.

Fifth. That on October 27, 1898, plaintiff gave the bank a note for $720 for borrowed money and made a deposit of the same but never received credit for said deposit.

The evidence shows Caldwell and Bondurant were intimately associated in business and each was accustomed to draw checks in the other's name on the defendant bank which the bank honored; but Caldwell says this was never done without express authority in each instance to the party signing the other's name to do it. He does not say, however, that the bank was bound to ascertain whether such authority had been given before it paid a check. We think the evidence conclusively proves Caldwell's course of dealing with the bank was such as to justify it in honoring a check signed in his name by Bondurant.

As to the first item, to-wit, the $1,700 note, the evidence is extremely contradictory. Plaintiff contends that when it was given he had a balance of over six hundred dollars in the bank instead of an overdraft. This balance in his favor is disputed by the bank's cashier and appears not to be shown by its books. There was testimony, too, that when Caldwell first became discontented in regard to said note he asserted he was induced to execute it at Wright's request, not to make good an overdraft, but in order that it might be shown to the bank inspector who was soon to examine the bank, thereby increasing the bank's apparent assets.

The testimony for the defendant tends to prove the note was not requested to make good an overdraft but was given to sum up and include different items of indebtedness then owing by Caldwell and among others a note for $720; also that the receipt Caldwell testified

about was a receipt against the note for seven hundred and twenty dollars, which was carried into the larger one but not surrendered at the time because locked in the bank vault. Caldwell did not produce the receipt at the trial but swore he had lost it; so proof of its contents had to be made by oral testimony.

The charge of the plaintiff that he deposited one thousand dollars borrowed from Wood and got credit for only four hundred dollars was met by evidence that both Caldwell and Bondurant borrowed the money and that it was divided and deposited according to their direction. In respect to the $800 paid out of Caldwell's account on a check drawn by Bondurant, the evidence of the defendant, as stated, showed the bank was justified in honoring that check on account of the previous course of dealing in which, with Caldwell's consent and approval, it had honored checks drawn by Bondurant on the former's account. The deposit of two hundred dollars which Wright, the cashier, is accused of placing to his own account instead of Caldwell's credit, was shown to have been a check given to Wright personally to pay for corn purchased of him. This item was not stated in the petition originally, but there was an amendment to include it when it was developed by the evidence. The $720 note was shown by the testimony of the defendant to have been given to take up prior notes aggregating that sum, in which case, of course, plaintiff was not entitled to be credited with the proceeds of the note.

The circumstances surrounding all these transactions are minutely gone into by the witnesses, whose testimony we have attentively weighed and considered without finding any reason to be dissatisfied with the conclusions of the circuit court. The proof is as clear as such a mass of figures, dates and details can be to a non-expert, that the account between the parties was correctly kept by the bank and that the plaintiff owed both the seventeen-hundred dollar note and the balance

of $76.78 for which judgment was entered in the bank's favor.

No legal propositions arise on the record to be considered.

The appellant contends that certain affidavits tending to impeach the reputations for veracity of Wright and Bondurant, not presented to the court below but presented first to this court, should be considered along with the evidence in the record in determining whether a new trial should be awarded.

Bondurant was plaintiff's witness and plaintiff could not have impeached his reputation at the trial. State v. Burks, 132 Mo. 363; Dunn v. Dunnaker, 87 Mo. 597.

It is a novel suggestion that original testimony can be produced in this court and that we should take account of it in disposing of the case. This is a court of appellate and not of original jurisdiction; except in certain specified cases. It is likewise a court of review and not of trial and deals with the record of the proceedings in the lower court. The contention of the appellant that we should consider this new testimony is without merit. Knowles v. Mercer, 16 Mo. 455; Gamble v. Gibson, 83 Mo. 290; State ex rel. v. St. Louis Court of Appeals, 88 Mo. 135.

The judgment is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.