# THE STATE v. MARTIN A. HULBERT, Appellant.

Division Two, July 14, 1923.

1. **WITNESS: Impeachment.** Defendant cannot impeach a witness for himself by offering the testimony of the witness on a former trial. Where the witness, called by defendant, had testified that she could not identify the defendant as the murderer, her testimony on the former trial, at which she had testified for the State, cannot be used by defendant for the purpose of impeachment. ˙

2. ————: **Testimony Before Grand Jury: Harmless Error.** For the State to cross-examine a witness for defendant concerning her testimony before the grand jury in identification of defendant as the man who fired the fatal shot is error, but if it elicited no fact prejudicial to defendant, and all such inquiries as had a prejudicial aspect were excluded from the jury's consideration by the court's rulings at the time and later by instructions directing the jury to disregard them, the cross-examination was not prejudicial or reversible error.

3. **EVIDENCE: Statement Made by Witness in Defendant's Presence: Silent Admission: Identification.** Testimony by a police officer that a certain witness for defendant had stated, at the police station and in the presence of defendant and while he was under arrest, a few days after the murder, that the defendant was the man who fired the shot that killed deceased, is error, if its purpose is to elicit an admission from defendant or to construe his silence as indicative of guilt, but is not reversible error if its purpose is to identify the defendant as the man who was present at the police station and the statement is not necessary for that purpose, the defendant being identified by several other witnesses. In this case the eyesight of a witness for defendant had become seriously impaired, and she had testified that she was not able to identify the defendant as the man she had identified at the police station, and the officer was permitted to testify that the defendant was the same man she had pointed out at the police station as the man who had committed the murder; and it is, *Held,* that the officer's statement does not come within the rule against admissions made under duress.

4. · **MOTIVE: Instruction.** Substantial evidence that defendant fired the fatal shot, seized a bag of money which had been in deceased's possession and fled, sufficiently establishes intent, and makes unnecessary an instruction upon motive.

5. **DEFENDANT AS WITNESS:** Impeachment. Where defendant tes-
tifies in his own behalf he is subject to impeachment, and regard-
less of the fact that he has not introduced testimony relating to
his character the State may show that his reputation for morality
is bad.

6. **INSTRUCTION:** Good Character. The giving of an instruction
in regard to good character, in the absence of proof thereof, is
not mandatory, but is more favorable than otherwise to defendant,
and affords him no ground of complaint.

Appeal from St. Louis City Circuit Court.—*Hon. Frank Landwehr*, Judge.

Affirmed.

*Thos. J. Rowe, Jr.* and *Henry Rowe* for appellant.

*Jesse W. Barrett*, Attorney-General, and *J. Henry Caruthers*, Assistant Attorney-General, for respondent.

WALKER, J.—Appellant was indicted in the Circuit Court of the City of St. Louis for murder in the first degree. Upon a trial he was convicted and his punishment assessed at life imprisonment in the penitentiary. From this judgment he appeals.

On the 25th day of July, 1919, Otto Bauer was shot and killed in said city when he was in the act of checking up the accounts and counting the money in a grocery store of which he was the auditor or supervisor. It was about 7:30 o'clock p. m. when a man, subsequently identified as the appellant, rushed into the store, and stepping behind a halfgrown girl who happened to be there he shot Bauer twice, killing him instantly, and grabbing part of the money which Bauer had laid on the counter he fled. The store was well lighted at the time and the appellant was subsequently identified as the murderer by several witnesses who either saw him at the scene of the crime or when fleeing therefrom. His defense was an alibi. In addition to his own testimony,

one witness stated that he was with the appellant 'at a saloon some six or seven blocks from the place where the murder was committed until about seven o'clock that evening. The crime was shown to have been committed at about 7:30 o'clock p. m. The unsavory reputation of appellant, who testified in his own behalf, for general morality was shown. We will consider the errors assigned in the order of their submission.

I. There was substantial evidence that the appellant committed the crime and following our former ruling upon the question of an alibi when this case was before us on a former appeal (228 S. W. 499) we hold that the finding of the jury as to this phase of the case is final, and we will not disturb the same.

II. Katie James, who was in the grocery store at the time of the murder, had testified at the former trial on behalf of the State. She was not so called or examined at the present trial, but was introduced and examined Impeachment. as a witness for the appellant. On her direct examination she testified that she could not identify the appellant as the man who fired the shot at the grocery store which killed Bauer; that this was more than she could answer, that she did not know. A further inquiry elicited a like response. Her former testimony was then submitted to her and she was asked to state whether her reading or examination of the same refreshed her memory as to what she said at the first trial with reference to the appellant being the man that fired the shot at the store. This inquiry was persistently made and objections thereto sustained, which rulings are assigned as error. It is somewhat difficult, under the well recognized rules of evidence, to determine upon what theory it was sought by the appellant "to refresh her memory," as it is termed by counsel for the defense, as to what she had said at the first trial. That was not the issue, but, what with her memory refreshed, she would then testify to. She had not testified adversely to the

appellant. She was his witness. A party who makes a witness his own on one hearing is in no wise bound by his testimony or held to sustain a like relation to him on a subsequent trial although the parties and the subject-matter at both hearings are the same. [Cudworth v. So. Car. Ins. Co., 4 Rich. L. (S. C.) 416, 55 Am. Dec. 692; 7 Encyc. Ev. p. 39 and notes.] Nor does one make a witness his own within the rule limiting the right of impeachment by summoning the witness (Milton v. State, 40 Fla. 251, 24 So. 60); nor by simply putting him on the witness stand and causing him to be sworn (Ayers v. Railroad, 190 Mo. 228; Harris v. Railway, 115 Mo. App. 527; Musick v. Ray, 3 Metc. (Ky.) 427); nor by only asking him immaterial questions when put upon the stand. [Bebee v. Tinker, 2 Root (Conn.) 160.] The test as to whether a witness is one's own or not so as to limit the right of cross-examination for the purpose of impeachment is, was he called and examined upon a material issue by the party seeking to impeach him; if so, such party cannot impeach him by the proof of precedent variant statements. This salutary rule is based upon the theory that one who places a witness upon the stand vouches for his credibility and will not be permitted to gainsay the same. Having testified, as the witness did at bar, that she could not identify the appellant as the murderer did not render her adverse or hostile to the extent of authorizing her impeachment by the appellant. [State v. Bowen, 263 Mo. 1. c. 282.] To render her subject to impeachment it was not enough that she failed or refused to tell all of the facts theretofore related, but that she relate contradictory facts or in effect becomes a witness for the prosecution. [State v. Bowen, supra, and cases; State v. Drummins, 274 Mo 1. c. 647; State v. Burks, 132 Mo. 363.] Not only is the rule as to the impeachment of one's own witness buttressed by the rulings of our own courts of last resort, but our statute (Sec. 5414, R. S. 1919) gives affirmative recognition to same in limiting cross-examinations to the par-

ty to a suit against whom a witness has been called and who has given some evidence in the case. As shown, no fact stated by Katie James upon her examination by the appellant tended even remotely to establish his guilt. It was innocuously negative. Her testimony therefore could have neither surprised nor misled the appellant to his detriment. If she had identified the appellant as the murderer at the former trial, it was within the province of the State to show this fact to affect her credibility, but certainly it will not be contended that appellant was prejudiced in being deprived of the privilege of making this proof, the result of which would have been to aid in adjusting a noose for his own neck. There is therefore no merit in this contention.

III. The course pursued by counsel for the State in the cross-examination of the witness Katie James concerning her testimony before the grand jury in identification of the appellant as the man who fired the fatal shot, is not to be commended, but on the contrary disapproved. Despite the unnecessary and unwise presentation of this cross-examination it resulted in eliciting no fact prejudicial to the appellant. In addition, whatever inquiries were made, which upon a fair analysis may be held to have been prejudicial, were not only excluded from the jury's consideration by the sustaining of objections made thereto at the time, but by instructions directing the jury to disregard the same at the close of the testimony. In thus disposing of this contention we are not oblivious to the fact that all errors are generally to be regarded as prejudicial. This rule, however, is only presumptively true. If an analysis of the error complained of be made in the light of reason, which is but a right application of common sense, and it is found that the course pursued or the fact elicited worked no hurt to the accused, then it should not be held of sufficient magnitude to authorize a reversal of the case.

Cross-Examination: Harmless Error.

Not only is a trial court, but one of review, especially in the prosecution of crime, charged with a double responsibility; on the one hand the court is required to see that every right accorded to the accused by organic or statutory law is granted to him; and on the other, that the rights of the State are recognized and zealously guarded that offenders may not escape punishment through mere technicalities. It is enough, therefore, if it appears from the record that while errors may have been committed by the State in the prosecution of offenders, if they were thereby deprived of no substantial rights they have no ground of complaint.

IV. Error is assigned in the admission of the testimony of a police officer, Henry Smith. He was permitted to testify to a statement made by a witness for the appellant, Katie James, at the police station in the presence of the appellant while he was under arrest a few days after the murder, to the effect that he was the man who fired the fatal shot that killed Bauer. If the officer's examination under the circumstances stated and as indicated by the inquiries themselves, show or clearly indicate that the purpose was to elicit an admission or a denial from him or to enable his silence to be construed as indicative of his guilt, then the officer's examination was improper and subject to the objection urged thereto by the appellant. This was not its purpose, however, but to further identify the appellant as the guilty party. This, it is true, had been done by several other witnesses and hence the examination of the officer to enable the State to make out a case was unnecessary.

*Silent Admission: Identification.*

That the subject-matter of the officer's testimony was hearsay may be admitted, but in the presence of other witnesses who testified as to the identity of the appellant it was harmless. This leaves for consideration the question as to whether the examination of the officer is subject to the objection made thereto. The circumstances

299 Mo.—37.

under which it was made show that it was not within the purview of the rule contended for. The record shows that after Bauer was killed and before the present trial, the witness, Katie James, had an attack of influenza from the effects of which her eyesight was so seriously impaired that she was unable at the trial to identify the appellant as the man who had fired the fatal shot or to say whether he was the man she had identified as the murderer a day or two after the occurrence. She had testified, however, that the man she had thus identified at the police station was the one who did the killing.

The inquiry made of the officer to which the objection of the appellant is urged is as follows:

"Q. What, if anything, did Katie James say when this defendant was brought before her? A. When he was brought into the room she looked at him, turned him around several times, walked him back and forth, and said he was the same man that was in the grocery store the night that Bauer was killed."

In view of the nature of this inquiry and the reply made thereto it cannot in reason be said that this examination constituted any attempt to in anywise commit the appellant to any attitude as to his innocence or guilt. On the contrary the examination served the useful purpose in a prosecution of this character, where it was not prejudicial as hearsay, to more closely identify the appellant with the commission of the crime. Viewed from this vantage it was not subject to the objection made thereto by the appellant, in that it was not within the purview of the rule against the admission of testimony, the evident purpose and effect of which (as we have recently ruled in the well considered opinion of DAVID E. BLAIR, P. J., in State v. Goldfeder, 242 S. W. 403), is to commit the appellant, while under arrest and hence in duress, to an attitude antagonistic to his plea of not guilty. We therefore rule that the officer's examination was not prejudicial.

V. There was substantial evidence to establish the fact that the appellant shot Bauer, grabbed the money which had been in the custody of the latter and fled.

Motive. These facts sufficiently established the intent with which the crime was committed. This essential having been shown it was not necessary that an instruction upon motive be given. [State v. Clinton, 278 Mo. l. c. 350, 213 S. W. 841; State v. Aitken, 240 Mo. 267; State v. Santino, 168 S. W. (Mo.) 976.]

VI. Defendant testified in his own behalf. He therefore was subject to impeachment and to be discredited as any other witness; and regardless of the fact that he may not have introduced testimony in regard to his character it was permissible to show that his general reputation for morality was bad. [State v. Priest, 215 Mo. l. c. 7.]

Nor will the appellant be heard to complain that error was committed in the giving of the usual instruction in regard to good character as is required by Section 4025, Revised Statutes 1919. While the giving of this instruction is not mandatory in the absence of proof of good character (State v. Byrd, 213 S. W. (Mo.) 35; State v. Cook, 207 S. W. (Mo.) 831) it was not error but rather more favorable than otherwise to give it in the absence of such proof, and he has therefore no ground of complaint.

Appellant's guilt having been shown by substantial evidence in a trial fairly conducted in which he was represented by able counsel he has no ground of complaint.

The judgment of the trial court is therefore affirmed. All concur.