STATE OF MISSOURI, Respondent, v. ROY HOWARD WHIPKEY, Appellant, No. 42291—238 S. W. (2d) 374.

Division Two, March 12, 1951.

Motion for Rehearing or to Transfer to Banc Overruled, April 9, 1951.

*Morris A. Shenker* for appellant.

1010

*J. E. Taylor,* Attorney General, and *Lawrence L. Bradley,* Assistant Attorney General, for respondent.

1012

[376] BOHLING, C.—Roy H. Whipkey appeals from a judgment imposing a sentence of thirty-five years' imprisonment for the murder, in the second degree, of Bobbie Jean Kerr. The case is pending on second appeal, a conviction imposing life imprisonment having been remanded for new trial, 358 Mo. 563, 215 S. W. 2d 492.

The State's evidence warranted the following findings. Appellant, who was married and thiry-six years of age, and Miss Kerr, who was nineteen, had been living together. Appellant had told Miss Kerr if he caught her with another man he would kill her. On the evening of July 29, 1946, he was searching for her, having called for her in person three times at her mother's home. About 8:30 p. m. Miss Kerr, Lew Berg, Steve Cascio, and "Cotton" Wood were at the bar of a tavern at 2023 North Broadway, St. Louis, Missouri, when appellant entered. Appellant walked toward Miss Kerr, stabbed Berg in the back twice with a butcher knife while passing him, and then started stabbing Miss Kerr. Cascio and Wood commenced fighting appellant, using a chair. Berg fell to the floor. Miss Kerr screamed, ran out the door, and collapsed on the sidewalk. Appellant also ran into the street with Berg's companions pursuing him. When appellant reached the middle of the block he started cutting his throat. He then circled, returned to where Miss Kerr was lying on the sidewalk, stood over her, took the knife in both hands and stabbed her in the back three times. Miss Kerr was taken to the hospital, where she was pronounced dead. Additional facts will be developed in the course of the opinion.

 The court gave an instruction on manslaughter, but appellant contends it was erroneous under R. S. 1949, § 546.070(4), in that it failed to embrace the offense of manslaughter through culpable negligence. Culpable negligence, briefly stated, as here used connotes negligence of such reckless or wanton character as to indicate an utter indifference to the life of another. State v. Adams, 359 Mo. 845, 224 S. W. 2d 54, 57[1, 2]; State v. Studebaker, 334 Mo. 471, 66 S. W. 2d 877, 881; State v. Melton, 326 Mo. 962, 33 S. W. 2d 894, 895[4]; State v. Carter, 342 Mo. 439, 116 S. W. 2d 21, 22[1]; R. S. 1949, § 559.070.

Appellant testified that he was drinking a glass of beer at the bar of the tavern; that a glass of beer was turned over and a fellow grabbed him by the right shoulder, hit him in the jaw, and he went down on his back; that then two or three fellows jumped on him and started stamping and kicking him; that he kicked them off and finally got to his feet and someone hit him on the head; that Miss Kerr got between [377] them and begged them to stop fighting;

that someone knocked Miss Kerr down; that he was knocked unconscious while in the tavern and did not regain consciousness until he was in the hospital. He also testified that he had no knife; that he did not see a knife; that he never stabbed Miss Kerr; and that he did not strike Miss Kerr.

Under the State's evidence appellant was guilty of murder. Under appellant's evidence he was innocent. There was no evidence upon which to base a manslaughter instruction on any culpable negligence of appellant.

Dr. Martin J. Glaser, who conducted the autopsy, testified the cause of death was "hemorrhage caused by stab wounds of the heart and lungs, multiple stab wounds of the body." He stated on cross-examination that the primary cause of death was a stab wound of the heart, testifying "under the breast there is a cut like this to the apex of the heart (indicating)." Among other wounds on the body were three stab wounds in the back and one large wound over the right breast. On redirect examination he testified that the heart was about four inches from the back, and a six inch blade entering from the front or back could have caused the wound to the heart. He also stated that the two top wounds on the back entering the lungs could have caused death. The witness' opinion was that the stab penetrating the heart entered the front of the body but he was not absolutely certain of this.

Appellant contends the redirect examination was improper because the witness had already stated death was due to a different cause; that no foundation had been laid for impeachment by the State, and that the questions assumed matters not in evidence. The contentions are overruled.

According to Dr. Glaser the primary cause of death was the stab wound in the heart, but the stab wounds of the lungs were sufficient in themselves to cause death. His testimony permitted the inference that the wounds in the back could have reached the heart. Appellant brought out that the witness observed a stab wound under the breast which he thought penetrated the heart.

The redirect examination was not an attack on the witness' reputation for veracity, or an attempt to establish prior statements inconsistent with his testimony. No occasion existed for laying a foundation for impeachment. The purpose of a trial is the proof of all relevant facts that the jury may determine the truth; and the proof of a fact tending to contradict and possibly to discredit other testimony, due to mistake or other cause, of the same witness to another fact is proper if relevant to the issues. The instant redirect examination consisted of pertinent questions to correct a possible discrediting effect of the cross-examination. The testimony was relevant and its value was for the jury. It may have tended to discredit other testimony of the witness and to that extent favor appellant, but it was not a

legal impeachment of the witness. Consult Brimm v. Alexander, 185 Mo. App. 599, 603, 172 S. W. 480, 481; Plunkett-Jarrell Gro. Co. v. Johnson, 137 Ark. 615, 206 S. W. 677, 678 [5]; State v. Winder, 183 N. C. 776, 111 S. E. 530, 531[4]; State v. Cummins, 76 Iowa 133, 40 N. W. 124,.125[1]; Greenleaf v. Pacific T. & T. Co., 43 Cal. App. 691, 185 P: 872, 873[4, 5]. Cases stressed by appellant. (State v. Gregory, 339 Mo. 133, 96 S. W. 2d 47, 55[8, 9], citing cases; State v. Hulbert, 299 Mo. 572, 253 S. W. 764, 766[4]) are based upon different factual situations.

In his brief appellant argues that the hypothetical question asked Dr. Glaser by the State assumed the knife had a blade six inches in length. This charge of error was not mentioned in appellant's .motion for new trial and was not presented in the objection lodged against the testimony. It is not for review. R. S. 1949, § 547.030. There was evidence, adduced later, that the butcher knife had a six inch blade. Prejudicial error is not established.

Appellant makes several complaints that his cross-examination extended beyond the scope of the direct examination. Our review of the record indicates the court endeavored [378] to keep the cross-examination within the direct examination whenever an objection was interposed to that effect.

George Frisby, who was sitting in front of the Albers Hotel across the street from the tavern, gave damaging testimony against appellant. Appellant had knowledge of what his testimony would be. Frisby also testified that appellant walked up to him on the street near the Albers Hotel, we understand in May, 1947, and told him if he appeared against him, he, appellant, was going to shoot witness full of holes. Appellant testified in chief that he was confined in jail and, on cross-examination denied that he had had any conversation with Frisby. He was then asked what date he was confined in jail after May 7, 1947. This was objected to on the ground the question was beyond the scope of his direct examination. The court overruled the objection, stating appellant had testified he was confined in jail. Appellant answered: ''I don't remember.'' A defendant who testifies is ''liable to cross-examination, as to any matter referred to in his examination in chief, and may be contradicted and impeached as any other witness in the case * * *.'' R. S. 1949, § 546.260. If the question were beyond the scope of appellant's examination in chief, it does not follow necessarily that reversible error was committed as we cannot say appellant's answer ''I don't remember'' prejudiced him. State v. Feeley, 194 Mo. 300, 316, 92 S. W. 663, 667, 3 L. R. A. (N. S.) 351, 112 Am. St. Rep. 511; State v. Dixon (Mo.), 190 S. W. 290, 293[5]; State v. Krauss (Mo.), 171 S. W. 2d 699, 700[3]; State v. Porter, 357 Mo. 405, 208 S. W. 2d 240, 241[3].

Appellant also complains of questions whether scar marks on his chest were the result of an incident occurring on May 17, 1936. The

record does not disclose an objection to the questions on the ground now assigned. On direct examination appellant testified that in the fight at the tavern he had been slashed three times across his chest, his throat had been cut, his hand cut wide open, and that he received other injuries. The direct examination opened up the issue as to when appellant received the scars on his chest.

Complaint is made of two questions asked appellant inquiring whether he had informed the officers of his version of the fight at the tavern as given on the witness stand. The objection to each question was promptly sustained and the questions were not answered. The court refused to declare a mistrial. Reversible error is not established. State v. Ferguson, 278 Mo. 119, 212 S. W. 339, 344[12]; State v. Davit, 343 Mo. 1151, 125 S. W. 2d 47, 54[17]. Appellant here mentions the argument wherein the State's attorney asked whether anyone up to the time of trial, except appellant's counsel, had been informed of appellant's version of the occurrence. The court promptly sustained appellant's objection, admonished counsel to stay within the evidence but refused to declare a mistrial. In the circumstances we need not consider whether the argument was proper. This contention ignores appellant's testimony that he was the one who was assaulted and that he committed no offense. State v. Millsap, 310 Mo. 500, 276 S. W. 625, 630[15]. Whether counsel's remarks called for a reprimand or the discharge of the jury rests largely in the discretion of the trial court. State v. Albritton, 328 Mo. 349, 40 S. W. 2d 676, 681[15]; State v. Smith, 313 Mo. 71, 281 S. W. 35, 40[15, 16]; State v. Nichols, 327 Mo. 1237, 39 S. W. 2d 777, 779[4]. We overrule the contentions.

The State offered four witnesses in rebuttal. The court refused to permit them to testify. Their testimony, had it been admitted, would tend to corroborate the testimony of witness Frisby on appellant's threat to shoot him if he testified. Appellant complains of the fact that the State continued to offer the witnesses in rebuttal on the issue after the court had taken the position it was not proper rebuttal testimony. We have ruled that it is discretionary with the trial court to allow evidence in chief to be introduced in rebuttal and, unless that discretion is abused, it will not justify reversal. R. S. 1949, § 546.070(3); State v. Hobson (Mo.), 177 S. W. 374, 376[4]; State v. Baker, 262 Mo. [379] 689, 172 S. W. 350, 354[8]; State v. Weiss (Mo.), 219 S. W. 368, 373[3]; State v. Martin (Mo.), 56 S. W. 2d 137, 140[12]; State v. Lewis (Mo.), 137 S. W. 2d 465, 467[4]. Appellant may not successfully urge reversible error on this issue.

Many complaints are lodged against the argument for the State.

Counsel informed the jury that in serious cases of this nature the law did not permit them to separate. The court sustained appellant's

objection, instructed the jury to disregard the remark but refused to declare a mistrial.

Counsel stated that Mrs. Gardus, a State's witness, appeared under subpoena and had no interest in this particular case or in the appellant. As we read the record, the court again sustained appellant's objection and ordered the statement stricken but refused to declare a mistrial. The fact that a witness is disinterested might have a bearing on his credibility and the weight to be given his testimony. Consult State v. Woods, 346 Mo. 538, 142 S. W. 2d 87, 90 [8-10].

Counsel stated Mrs. Gardus saw the fatal, lethal three wounds put into the body. Appellant's objection was sustained and the jury told to disregard the argument but the court refused to reprimand counsel or to declare a mistrial. This witness saw appellant stab Miss Kerr while she was lying on the sidewalk and, although Dr. Glaser was of opinion the fatal stabs entered from the front, he also gave testimony to the effect the stabs in the back would cause death and there was testimony justifying an inference that some of the stabs of the six inch butcher knife in the back might have reached the heart. It appears that the statement was within the record. What we have just said overrules a contention respecting Dr. Glaser's testimony.

Mrs. Fortner testified that Miss Kerr screamed when appellant stabbed her, and appellant's objection to the statement was not well taken. Also, there was testimony that Miss Kerr had been stabbed in the back and in the front, and appellant's objection to that statement was properly overruled.

The court sustained appellant's objection to the prosecutor's statement that some testimony with respect to appellant's threat against witness Frisby was not admitted. The court complied with appellant's objection, instructed the jury to disregard the statement and directed the prosecutor to stay within the record.

The prosecutor also referred to two letters written by Miss Kerr, stating that in each letter she stated she was ''trying to leave this killer—.'' Appellant objected on the ground there was nothing in the letters about Miss Kerr trying to leave appellant. The court was of the opinion one of the letters contained statements to that effect. Appellant's counsel insisted there was nothing in either letter about her trying to leave. The prosecutor again stated that ''in each she spoke of leaving this person.'' Again the court sustained the objection as to one of the letters. In one of the letters Miss Kerr wrote she stated she hoped her friend and Roy, appellant, would forgive her, but that she had taken some of her things and would be married by the time her friend received the letter; that her future husband was a soldier and they intended going to New York. She asked her friend to kiss appellant good bye for her. The inference was warranted that Miss Kerr was at that time leaving appellant.

Counsel also stated that Miss Kerr was speaking through him from her grave, and asking the jury "to give this killer the same consideration he gave her." The court sustained appellant's objection and complied with his requests to instruct the jury to disregard the statement and to reprimand the attorney.

The foregoing disposes of the issues mentioned in appellant's brief. The court sustained appellant's objections whenever they disclosed meritorious grounds, but refused to declare a mistrial. The trial court has a large discretion in matters of this nature. See State v. Nichols, supra; State v. Marshall, 317 Mo. 413, 297 S. W. [380] 63, 69; State v. Lynn (Mo.), 23 S. W. 2d 139, 141. We hold reversible error is not established.

No contention is presented respecting the record proper. We find no error therein.

The judgment is affirmed. *Westhues* and *Barrett, CC.*, concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.