THE STATE v. HARRY MURPHY, Appellant.—23 S. W. (2d) 136.

Division Two, December 11, 1929.

*Stration Shartel,* Attorney-General, and *Don Purteet* and *Carl Otto,* Assistant Attorneys-General, for respondent.

HENWOOD, C.—The defendant was convicted of manslaughter, in the Circuit Court of the City of St. Louis, and sentenced to imprisonment in the penitentiary for two years. In due course, he appealed.

It is charged, in the indictment, that one May Martin was killed as the result of the defendant's culpable negligence in operating an automobile.

The evidence shows that the collision in question occurred on Jefferson Avenue in the city of St. Louis, at or near the intersection of Jefferson Avenue and Armand Street, about nine o'clock in the evening of August 18, 1927. At that point, Jefferson Avenue was eighty feet in width, from curb to curb, and extended north and south. It was paved with asphalt and its surface was dry at the time of the collision. In the middle of Jefferson Avenue were double street-car tracks, extending north and south. The east tracks were used by north-bound street cars and the west tracks by south-bound street cars. Armand Street, extending east and west, intersected Jefferson Avenue on the west, but did not extend east of Jefferson Avenue. Adjoining the east street-car tracks, on Jefferson Avenue, was a safety zone, five feet in width and about the length of a street car, for the use of passengers in getting on and off of northbound street cars. All of the safety zone, except the north four or five feet thereof, was south of the south line of the intersection. The north, east and south boundary lines of the safety zone were plainly marked with yellow paint. The distance between the east boundary line of the safety zone and the east curb line of Jefferson Avenue was twenty-three feet. Jefferson Avenue was well lighted, by a new lighting system, in the vicinity of the safety zone, at the time of the collision. The deceased, Mrs. May Martin, was twenty-five years of age and lived with her husband on Armand Street, near its intersection with Jefferson Avenue. Shortly before the collision, she walked from her home to the safety zone mentioned, with her friend, Miss Beulah Cline, where Miss Cline intended to board a northbound street car. Henry Wessling and Elmer Guth passed that point in a Ford coupe, driving south on Jefferson Avenue. Wessling thought Miss Cline was another young lady with whom he was acquainted, and, at Shenandoah Avenue, one block south of Armand Street, the Ford coupe was turned around and driven back on the east side of Jefferson Avenue to a point opposite the north part of the safety zone. Wessling and Guth saw the ladies at a distance of 150 feet, while driving back north from Shenandoah Avenue. The Ford coupe was stopped about one foot and a half from the east curb line of Jefferson Avenue and about fifteen feet from the safety zone. Wessling said "Hello" to the ladies, and about that time, or immediately thereafter, the ladies were both struck, with great force

and violence, by the front end of a Dodge coupe which the defendant was driving in a northerly direction at a high rate of speed. The defendant stopped the Dodge coupe, and abandoned it, about one block farther north, on Jefferson Avenue, and did not return to the scene of the collision. When struck by the Dodge coupe, the ladies were standing in the north part of the safety zone. Mrs. Martin was picked up about sixty feet, and Miss Cline about thirty feet, north of the north boundary line of the safety zone. Mrs. Martin's skull was fractured, the bones of both her legs were broken, above her knees, and she was otherwise injured, as the result of the collision. She died, in a hospital, that night, from a brain hemorrhage caused by the fracture of her skull. There was no automobile moving north on Jefferson Avenue in front of the Dodge coupe nor behind it, at the time of, or immediately before, the collision. It was moving straight ahead, at a rate of speed variously estimated from twenty-five to fifty miles per hour, without swerving to the right or to the left. About 11:30 that night, police officers arrested the defendant at his home. They smelled alcohol on his breath. "He was under the influence of liquor. It looked like he was just coming to, getting over his drunk." The next morning, at the police station, he told one of the officers that he had been with a Mr. Rodgers, who conducted a soft-drink parlor, and had been "drinking." According to the officer, he also said: "I left there about seven in the evening, and, as I remember, I thought there was somebody with me at the time. I rode around. I don't know just where I rode. I remember something happening; a bump of some kind. I remember leaving my automobile a stort time afterwards. As good as I remember, I think I went home on the street car."

At the trial, the defendant testified as follows:

"I was driving on Jefferson Avenue. It was about 8:30, I believe, as near as I could tell, and I noticed at Shenandoah a Ford coupe swung around from the west side of the street to the east. I was about fifteen or twenty foot back of this Ford coupe. It got down to Armand Place, it suddenly stopped, and I swung out to go around this Ford, and noticed two ladies standing near the car tracks. Just as I swung out they seemed to step forward right directly into my car before I could stop it. I stopped my car as quickly as I could and run into the curb with my car, and I was highly nervous and I started to get out, and I decided to go on a little ways further, and I was so nervous I didn't know what to do; I got about possibly five hundred feet from where this accident occurred, and I got out of my car again and got onto a street car and from there I went home." He further testified that he told his wife what had happened, and she gave him two hot toddies to "quiet down" his nerves. On cross-examination, he said his car was running at the

rate of about twenty-two miles per hour when the collision occurred; and that he checked its speed as soon as he "felt the impact," by applying the brakes "with full force," but it ran about seventy or eighty feet before he could stop it.

His wife was the only other witness in his behalf. She said he was very nervous when he came home, the night of the collision; and that he drank two toddies which she prepared for him.

The defendant's failure to file a brief leaves us without aid or suggestion, from him, in considering the matters complained of in his motion for a new trial.

I. The indictment is sufficient in every particular. It is exactly the same, in form and substance, as the indictment quoted and approved in State v. Renfro (Mo. Sup.), 279 S. W. 702, and in State v. Scheufler (Mo. Sup.), 285 S. W. 419.

II. The challenge of the sufficiency of the evidence is fully answered by the above statement of the evidence. It is not disputed that Mrs. Martin was struck and killed by the front end of an automobile, driven by the defendant, while she was standing in a well-lighted safety zone. The evidence tends to show that she could be seen, in the safety zone, at a distance of 150 feet south of that point; that the defendant's automobile approached her from the south, moving straight ahead, at a high rate of speed, without swerving to the right or to the left; that the defendant was intoxicated and therefore unfit, both mentally and physically, to drive an automobile on a public thoroughfare with proper regard for the safety of other travelers thereon; that, by exercising ordinary care and prudence, he could have avoided the collision by driving to the right or to the left of the safety zone; and that, at the time of the collision and immediately before, the defendant was driving his automobile at such a high rate of speed and in such a manner as to indicate a reckless disregard for human life and limb. These facts and circumstances are amply sufficient to support the finding that the defendant is guilty of manslaughter, as charged in the indictment; that is, the finding that Mrs. Martin was killed as the result of his culpable negligence in operating an automobile. [State v. Ritter (Mo. Sup.), 2 S. W. (2d) 753; State v. Millin (Mo. Sup.), 300 S. W. 694; State v. Scheufler, supra; State v. Renfro, supra.]

III. No error was committed by the trial court in failing to give the jury a special instruction on the defense that the collision was unavoidable. In Instruction 1, a verdict of guilty was predicated up-

on a finding that the collision, which resulted in Mrs. Martin's death, was caused by the defendant's culpable negligence in operating an automobile. In Instruction 2, culpable negligence was defined as "the omission on the part of one person to do some act under given circumstances which an ordinarily careful and prudent person would do under like circumstances, showing on the part of such person a careless or reckless disregard for human life or limb; or the doing of some act under given circumstances which an ordinarily careful and prudent person under like circumstances would not do, showing on the part of such person a careless or reckless disregard for human life or limb, by reason of which omission or action another person is directly endangered in life or bodily safety." The defense that the collision was unavoidable was covered by Instruction 1, in submitting the issue of whether or not the collision was caused by culpable negligence on the part of the defendant, and the meaning of culpable negligence, in law, was explained correctly in Instruction 2. It follows that a special instruction on the defense mentioned was not necessary for the information of the jury in giving their verdict, and that, in giving instructions 1 and 2, the trial court fully met the statutory requirement. [Sec. 4025, R. S. 1919.]

IV. Nor did the trial court commit error in overruling the defendant's objections to the following remarks of the circuit attorney, in his argument to the jury:

"Are you going to believe the testimony of a drunken driver?

"Did he explain a thousand other transactions in this case?"

It was shown that the defendant had been "drinking" shortly before the collision occurred, and that, about two or three hours after the collision, he was "under the influence of liquor" and was "getting over his drunk." In view of this evidence and the evidence as to the manner in which the defendant was driving his automobile at the time of the collision, the circuit attorney was warranted in referring to him as "a drunken driver." [State v. Peak (Mo. Sup.), 237 S. W. 466.]

The record shows that the circuit attorney was emphasizing the many undisputed facts and circumstances in evidence when he referred to the defendant's failure to "explain a thousand other transactions in this case." That remark, though an exaggeration, was a mere comment on the weight of the evidence and cannot be interpreted as a statement that the defendant must prove his innocence. [State v. Carey (Mo. Sup.), 278 S. W. 719; State v. Murray (Mo. Sup.), 292 S. W. 434; State v. Marshall (Mo. Sup.), 297 S. W. 63.]

V. The allegation that the verdict resulted from passion and prejudice on the part of the jury is of no avail, there being no proof to support it. We find nothing in the record to indicate that the jury was influenced by any improper motive. [State v. Renfro, supra.]

VI. In his assignments of error, relating to the admission and exclusion of evidence and to given and refused instructions, the defendant failed to specify, in his motion for a new trial, the particular matters complained of. Such assignments do not comply with the provisions of the statute and, for that reason, will be disregarded. [Sec. 4079, Laws 1925, p. 198; State v. Standifer, 316 Mo. 49, 289 S. W. 856.]

Our review of the record discloses no prejudicial error. The judgment is accordingly affirmed. *Davis* and *Cooley, CC.*, concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. *Blair, P. J.*, and *White, J.*, concur; *Walker, J.*, absent.