**STATE of Missouri, Respondent,**

v.

**Leslie ACHTER, Appellant.**

No. 54336.

Supreme Court of Missouri,
Division No. 2.

Oct. 13, 1969.

———◆———

John C. Danforth, Atty. Gen., Thomas L. Patten, Asst. Atty. Gen., Jefferson City, for respondent.

Weber Gilmore, Sikeston, for appellant.

PRITCHARD, Commissioner.

Defendant was convicted of the felony of manslaughter (in the operation of a motor vehicle) by the verdict of a jury. The occurrence was on Interstate Highway 57, about 2.8 miles east of the Sikeston, Missouri, interchange, in Mississippi County. Upon a charge of being a second offender, heard and determined by the court outside the hearing of the jury, defendant's punishment was subsequently set at ten years imprisonment in the Department of Corrections.

The dispositive issue on this appeal is whether the court committed reversible error in defining "culpable negligence" in Instruction No. 1 in failing to include "the element of reckless disregard of the consequences of the act or the omission from which the criminal intent may properly be inferred." It is also said by appellant under his Point II raising this issue that the court erred in refusing to give his Instructions Nos. D-1, D-2, and D-4, the latter instruction being on the subject of culpable negligence. And rather obliquely under Point III, appellant says that the state failed to make a submissible case, as argued: "The State might have made a submissible case under their theory of the law provided the State's Instruction number One was correct. Since we have previously pointed out that this Instruction was obviously erroneous, it follows that the State failed to make a submissible case."

On the day of the occurrence, October 21, 1967, appellant was in the company of James Boswell and Charles Williams. They started out together about 3:30 p. m. at Phonzie Brown's beer hall in East Prairie, went then to the V.F.W. Hall, where they each had one beer. They left then, appellant driving Boswell's 1959 Oldsmobile at all times (according to Boswell and Williams), and stopped at Curley McKinley's liquor store where they bought one or two six-packs of beer. They went from there toward the Oak Grove Night Club at Morehouse, but upon learning that it was closed set out for their home in East Prairie. Appellant, according to both Boswell and Williams, had consumed about three beers. Neither testified that he was drunk. Appellant drove onto the interstate highway near Sikeston and headed east toward Charleston. As he did so a red or maroon Thunderbird automobile was proceeding on the highway. Appellant passed the Thunderbird on its left, driving, according to Boswell, over 70—approximately 80 miles per hour, as he looked at the speedometer. Boswell asked appellant to slow down and he did so about 5 miles per hour—from 80 miles per hour to 75 miles per hour. The speed limit on the highway was 70 miles per hour. It was then "dusky dark," about 8:30 p. m., and the lights were turned on on the Oldsmobile. The Thunderbird then passed the Oldsmobile, and as it did appellant struck the left rear of a white Buick car which the deceased, Mr. Beck Brown, was driving at a speed of about 50 miles per hour in the right lane ahead. Appellant put on his brakes, cut to the left and tried to miss the Buick, but the right front of the Oldsmobile struck the left rear of the Buick, causing it to leave the roadway and turn over several times in the right ditch. The Oldsmobile went on into the center median strip and stopped on its wheels. Boswell's face struck the windshield, but Williams was not injured, he having time to brace himself with his arm before the impact. Williams threw the remaining, or empty, beer cans from the automobile, and got out of it. Appellant left the scene of the collision, and had one Sammy Dean drive him to the John Hen-

derson residence in East Prairie, Henderson being a half brother of appellant.

Charles Williams testified that appellant was going 80 to 85 miles per hour from the stoplight going toward Charleston on the interstate highway. He cautioned appellant once about his driving—asked him to slow down a little bit. Boswell asked appellant two or three times to take it easy with his car.

Appellant's version of the occurrence was that Boswell, not appellant, was driving the Oldsmobile at the time of the collision, that he had drunk very little beer, and was sitting on the right side of the front seat (where a Mrs. Wallace testified she saw him shortly before the collision).

■ Under proper instructions, and in resolving the conflicts in the evidence, the jury could conclude that appellant was guilty of the crime of manslaughter as charged. It could find that appellant was driving the Oldsmobile on Interstate Highway 57 at an excessive speed, engaging in a chase with the accompanying Thunderbird car. Although cautioned by Boswell and Williams to slow down, he did not heed that caution, but proceeded to drive above the speed limit into the rear of the slower moving vehicle ahead, causing the death of Mr. Brown. Although there was no direct evidence that appellant was drunk at the time of the collision, the jury could believe that he had been drinking beer, a fact to be taken into consideration with other facts. State v. Adams, 359 Mo. 845, 224 S.W.2d 54, 58 [6, 7]; State v. Hughey, Mo., 404 S.W.2d 725, 731. The fact that appellant fled the scene of the collision could also be considered by the jury on the issue of his culpable negligence.

Instruction No. 1, in the portion here relevant, is as follows:

"The court instructs the jury that the defendant is charged with manslaughter, that is, by causing the death of Beck Brown by criminal or culpable negligence of him, the said defendant.

"Criminal or culpable negligence, within the meaning of the law, is the omission on the part of a person to do some act under given circumstances which an ordinarily careful or prudent man would do under like circumstances, or the doing of some act, under given circumstances, which an ordinarily careful, prudent man under like circumstances would not do, and by reason of which omission or action another person is endangered in life or bodily safety. * * *."

Instruction No. D-4, offered by appellant and refused by the court, defined culpable negligence as being "the omission on the part of one person to do some act under given circumstances which an ordinarily careful and prudent person would do under like circumstances, showing on the part of such person a reckless disregard for human life or limb, or the doing of some act under given circumstances which an ordinarily careful and prudent person under like circumstances would not do, showing on the part of such person a careless or reckless disregard for human life or limb, by reason of which omission or action another person is directly endangered in life or bodily safety."

■ In his Point II, appellant says that Instruction No. 1 failed to include the element of reckless disregard of consequences from which criminal intent might properly be inferred, and is therefore erroneous within State v. Tatum, Mo., 414 S.W.2d 566, 568 [3] (citing and quoting State v. Millin, 318 Mo. 553, 300 S.W. 694, 697, "[A] proper definition of culpable negligence should include 'the element of reckless disregard of the consequences of the act or the omission from which the criminal intent may properly be inferred.'"). "Culpable negligence" is, of course, the very ingredient of the crime of manslaughter under § 559.070, RSMo 1959, V.A.M.S.: "Every killing of a human being by the act, procurement or culpable

negligence of another, not herein declared to be murder or excusable or justifiable homicide, shall be deemed manslaughter." In State v. Millin, supra, an instruction defining culpable negligence, much like Instruction No. 1 here, was condemned as being "nothing more than a definition of ordinary negligence" (300 S.W. 696). In State v. Sawyers, 336 Mo. 644, 80 S.W.2d 164, 166 [2], it was held that "One may endanger the life or bodily safety of another [as submitted by Instruction No. 1, supra] through ordinary negligence only, but that degree of negligence is not sufficient to render one criminally responsible." See also State v. Studebaker, 334 Mo. 471, 66 S.W.2d 877; State v. Murphy, 324 Mo. 183, 23 S.W.2d 136 ("the negligent act or omission must be one showing a careless or reckless disregard for human life or limb" [see 66 S.W.2d 880]); State v. Cutshall, Mo., 408 S.W.2d 94; State v. Cutshall, Mo., 430 S.W.2d 173.

 In appellant's motion for new trial he does not specifically attack Instruction No. 1 upon the ground that it erroneously failed to include the element of reckless disregard of the consequences from which criminal intent might be inferred. The ground asserted is: "3. The verdict of the jury is erroneous and against the law and the evidence for the reason that the State failed to prove, by competent evidence, that the defendant was guilty of culpable negligence as defined by the court in its instruction to the jury. Therefore, the jury could not have found the defendant guilty of culpable negligence as outlined in said instruction." As is obvious, the state correctly says the point was not properly preserved for review by this court. However, since the element of reckless disregard for the consequences of the act or omission was omitted in the instruction (and essentially included in appellant's refused Instruction No. D-4), and the jury was positively misdirected as to the definition of culpable negligence, the result is that the jury was authorized to convict appellant of manslaughter for mere ordinary negligence under Instruction No. 1. It is thus plain error substantially affecting appellant's rights to a fair trial under the manslaughter statute and the charge against him. It should be, and is, considered plain error under Supreme Court Rule 27.20(c), V.A.M.R. See and compare State v. Haygood, Mo., 411 S.W.2d 230; State v. Reeder, Mo., 395 S.W.2d 209.

Matters concerning appellant's extrajudicial statements to others that he was not driving the car, or that Boswell was driving it, contended by the state to be self-serving, are not likely to arise on new trial, the parties having become apprised by their briefs as to the law thereon. Should appellant's evidence on retrial require the giving of an accident instruction, that may and should be done under State v. Cutshall, supra, 408 S.W.2d 94.

The judgment is reversed and the case remanded for new trial.

BARRETT and STOCKARD, CC., concur.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

MORGAN, J., concurs.

DONNELLY, P. J., and FINCH, J., concur in result.