STATE of Missouri, Respondent,

v.

Leslie ACHTER, Appellant.

No. 54434.

Supreme Court of Missouri,
Division No. 2.

Jan. 12, 1970.

John C. Danforth, Atty. Gen., Thomas L. Patten, Asst. Atty. Gen., Jefferson City, for respondent.

Weber Gilmore, Sikeston, for appellant.

STOCKARD, Commissioner.

Defendant was prosecuted under the Second Offender Act, §§ 556.280 and 556.290 (all statutory references are to RSMo 1959 and V.A.M.S.), for manslaughter in the death of Mrs. Gladys Brown by reason of culpable negligence in the operation of an automobile in violation of § 559.070. The court fixed the punishment at imprisonment for a term of five years, and defendant has appealed.

In the automobile collision resulting in the charge in this case, Mr. Beck Brown was also killed and defendant was charged and found guilty of manslaughter by reason of his death. On appeal the judgment in that case was reversed because of an erroneous instruction. State v. Achter, Mo., 445 S.W.2d 318. There is no contention that the same error occurred in the trial of this case.

Defendant first contends on this appeal that the trial court should have directed a verdict of acquittal because the State failed to make a submissible case. In the opinion in the previous case the facts are set out in detail, and the evidence in this case was substantially the same. Such minor variances as occurred would not affect the issue of submissibility. It is sufficient to state that James Boswell and Charles Williams, who had been with defendant for several hours and who were in the automobile at the time of the collision, testified that defendant had been drinking, and that while operating the automobile after dark at an excessive speed on Interstate Highway 57 defendant crashed into the rear of a Buick automobile traveling in the same direction. From the evidence the jury could also find that immediately before or at the time of the collision defendant was racing with another automobile. For the reasons set forth in State v. Achter, supra at p. 320, where facts substantially the same as those in this case are analyzed, we hold in this appeal, as was held in that case, that a submissible case was made. See also State v. Feger,

Mo., 340 S.W.2d 716, involving a somewhat similar factual situation.

Defendant's remaining point is that the trial court erred in failing to give an accidental homicide instruction as a part of the law of the case. We are of the opinion that such an instruction was not required under the evidence.

Section 559.050 provides that a homicide shall be deemed excusable when committed in either of two situations by accident or misfortune, one of which includes the following: " * * * in doing any * * * lawful act by lawful means, with usual and ordinary caution, and without unlawful intent."

In State v. Cutshall, Mo., 408 S.W.2d 94, a manslaughter case based on culpable negligence in the operation of an automobile, the accused testified, contrary to the evidence presented by the State, that he had had nothing to drink and did not drive at an excessive speed, and that when attempting to obtain money from his pocket to pay a bridge toll and change traffic lanes he thought he saw another automobile to his right rear, and for that reason he turned his automobile to the left. In so doing he sideswiped the center median and was caused to lose control of his automobile. It was held that by reason of this evidence the trial court should have instructed on accidental homicide as a part of the law of the case. In so ruling the court cited State v. Sumpter, Mo., 184 S.W.2d 1005; State v. Crowley, 345 Mo. 1177, 139 S.W.2d 473; State v. Bradley, 352 Mo. 780, 179 S.W.2d 98; State v. Watson, Mo., 364 S.W.2d 519; and State v. Vincent, Mo., 321 S.W.2d 439. The rule announced in each of these cases is that where the evidence warrants it, the court must give an accidental homicide instruction, whether or not requested, as a part of the law of the case.

In this case defendant did not testify. We note as a matter of interest that in the previous trial involving the death of Mr. Brown defendant did testify, and his defense there was that it was James Boswell and not he who was driving the automobile at the time of the collision. In the trial of this case the evidence offered by defendant through other witnesses was to the effect that a short time before the collision he was not driving the automobile, that he was not drunk (not that he had not been drinking) several hours before the collision nor was he drunk the morning following the collision, and that Charles Williams was intoxicated to a greater degree than he had stated in his testimony. This evidence did not present the issue of an accidental homicide within the meaning of § 559.050.

Defendant is entitled, however, to the benefit of any evidence presented by the State, and we shall examine that. The only two witnesses whose testimony could have any bearing on the issue were James Boswell and Charles Williams who had been with defendant several hours before the collision and who were in the automobile at the time of the collision.

In addition to his testimony that defendant was driving the automobile and that he had been drinking, James Boswell testified as follows: "Well, we were traveling at a high rate of speed and a little Mustang [he later said it may have been a Thunderbird] * * * passed us, and [defendant] turned around and passed it again, and when he did, he pulled back into his right hand lane of traffic and we caught up with this Buick automobile, and evidently he lost control of it and hit this Buick before he could get stopped." On cross-examination he testified that when defendant passed the other automobile he was traveling about 80 miles an hour, and then, "We pulled back into our lane and we caught up with this Buick * * * [and defendant] evidently lost control and couldn't control the car and hit the back of the Buick." Subsequently the following occurred:

"Q. Had he [defendant] passed it [the other car] once before?

A. No. sir, he passed us.

Q. They passed you?

A. Yes, sir.

Q. And then he [defendant] passed them?

A. Yes, sir.

Q. Where was the Thunderbird in relation to your car when the accident happened?

A. It had done passed and gone past the Buick.

Q. The second time?

A. Yes.

Q. In other words, that kept Mr. Achter from pulling back out in that other lane, that car going by you, is that right?

A. Part of it, yes, sir."

Charles Williams testified that prior to the collision he had been asleep, that his hand had hit the "crank that lets the window down," and when the cold air hit him he "reached up to raise the window" and also "reached over and turned the radio on or something," and when he turned back "we was just right up on that car." He also testified that after he rolled the window up he looked to his left and saw a Thunderbird, but he did not remember whether it passed because he "wasn't paying that much mind to it."

■■■ We find no evidence in this case which presents the issue of accidental homicide within the meaning of § 559.050, or upon which such an instruction could be based. When defendant lost control of the automobile, if he did, it was because of his operation of the automobile while drinking at an excessive speed under the circumstances, and while racing with the Thunderbird. By disbelieving some of the State's evidence, or by refusing to draw some permissible inferences, the jury could have believed that defendant was guilty of negligent operation of the automobile but not guilty of culpable negligence within

the meaning of § 559.070. In that event it would have been required under the instructions given by the court to return a verdict of not guilty. However, the fact that a jury may disbelieve some of the evidence of the State, or decline to draw some or all of the permissible inferences, does not entitle the defendant to an instruction otherwise unsupported by the evidence, on the issue of accidental homicide pursuant to § 599.050, 41 C.J.S. Homicide § 387, p. 195; State v. Allen, Mo., 235 S.W.2d 294; State v. Watson, Mo., 364 S.W.2d 519, supra.

Defendant relies on the language in State v. Cutshall, Mo., 408 S.W.2d 94, supra, where, after setting out the accused's testimony from which it could be found that the homicide was accidental within the meaning of § 559.050, it was said: "Under this evidence, defendant might have been guilty of negligence for which civil recovery could be had, but he was not, as a matter of law, guilty of that culpable negligence essential to a conviction for manslaughter. Consequently, an accidental homicide instruction should have been given as a part of the law of the case." This is an adaptation of a statement in State v. Sumpter, Mo., 184 S.W.2d 1005. In each case there was evidence from which an accidental homicide within the meaning of § 559.050 could be found, and as stated in the Sumpter case, defendant "was entitled to have his theory of innocence submitted to the jury." The above statement in the Cutshall case must be read in connection with the facts of that case and with the earlier statement that "where the evidence warrants" the court must give an accidental homicide instruction. It is not to be construed as holding that because a jury may disbelieve some of the State's evidence showing culpability and conclude that the defendant was guilty of simple negligence only the court must instruct on accidental homicide.

We conclude that under the evidence in this case, the court was not required to

instruct on the issue of accidental homicide, as a part of the law of the case.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.