**STATE of Missouri, Respondent,**

v.

**Robert Eugene CARTER, Appellant.**

**No. 53874.**

Supreme Court of Missouri, Division No. 1.

March 9, 1970.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Belt & Klinginsmith, Ronald M. Belt, Macon, for appellant.

HIGGINS, Commissioner.

Robert Eugene Carter was convicted by a jury of manslaughter by culpable negligence and his punishment was assessed at imprisonment for one year in the county jail and a fine of $1,500. Pursuant to that verdict and as directed by law, the court sentenced and adjudged Robert Eugene Carter to imprisonment in the county jail for one year and to pay a fine of $1,000. §§ 559.070 and 559.140, V.A.M.S.; Criminal Rules 27.03 and 27.06, V.A.M.R.

On June 25, 1967, Jackie Lee Rhoades, age 24, with his wife and son, drove to the home of his father, Harry Rhoades, for Sunday dinner. The Harry Rhoades home was on Route J, an east-west blacktop road leading west from Highway 63 north of Macon in Macon County, Missouri. The younger Rhoades family started to its home northeast of Macon at approximately 2:45 p. m. Jackie Rhoades was driving eastwardly on Route J at a speed of 40 to 50 miles per hour. He was proceeding in his proper lane of traffic up a "real steep" grade over which the eastbound driver could not see. "Right at the top of the hill" he collided with a westbound automobile traveling in the eastbound side of the road. According to Mrs. Jackie Rhoades, her husband's health was "all right" immediately prior to the collision.

Marvin J. Richardson was a witness to the collision. He was out "Sunday driving" with his family and, prior to the collision, was driving westerly on Route J at a speed of 40 to 50 miles per hour. He characterized the hill-crest scene for an eastbound motorist as "a long slope—swag with a hillcrest then you drop down into the river bottom." The crest is "Pretty steep, * * * There's a swag there, and you can't see over that hill." Mr. Richardson first saw defendant's 1959 Ford, also traveling westerly on Route J, 250 to 350 feet to his rear. He had just noticed the Rhoades car descending a hill west of the hill he was approaching. He next noticed defendant when defendant started to pass him about 150 feet east of the hill crest. At that point he could not see over the hill crest. Mr. Richardson anticipated a collision between defendant and the thus hidden Rhoades automobile and "took to the ditch" on the north side of the road just east of the crest. Defendant was completely in the eastbound (wrong) lane as he passed and, an instant before collision, the Rhoades automobile came over the crest in its eastbound (correct) lane. He went immediately to the Rhoades automobile and noted Mr. Rhoades slumped over the steering wheel. He thought he was dead; he was not breathing and he said nothing. He talked with defendant at the scene and he smelled "kind of like a 'walking bar,'" and when he opened the door he "smelled the bar. * * * I saw a cold can of beer, some ice, and a busted cooler, and some coke."

Lester Hutton, operator of a funeral home and ambulance service, and former coroner of Macon County for ten years, went to the scene. He had also received specialized training in handling bodies, in injuries and anatomy. He noted Mr.

Rhoades on the driver's side of his automobile "with the major part of his body slumped to the right." He was dead. He later examined Mr. Rhoades's body at the funeral home in company with the Macon County coroner, Dr. Miller, deceased at time of trial. "We found that his chest was crushed, and multiple contusions over the trunk, and the head. * * * crushed chest, * * * ribs could be felt—that there was a break in the ribs by your fingers by merely just feeling of the chest, and fractured skull, which again could be felt. * * * One of the vertebra in the neck was crushed, again, you could feel it with your fingers." In his opinion, the crushed chest or the fractured skull, "probably the fractured skull," caused the death and it resulted from the collision in which he first observed the body.

Trooper Allen Fitzgerald of the Missouri State Highway Patrol investigated the collision. He arrived at the scene at about 3:30 p. m. He found the Rhoades 1964 Chevrolet headed east wholly in the eastbound lane and sitting "right in the skidmarks" running 63 feet back from the automobile. The skid marks from defendant's westbound automobile were also in the eastbound lane. "The point of collision was right on the crest of the hill * * * in the eastbound" lane. The usual debris, oil, water, antifreeze, etc., from a collision were present. The trooper examined the scene and stated that a westbound motorist "cannot see a car approaching as it comes up the far side of the hill." There is a blind spot for the westbound motorist which extends from 1800 feet east of the hill. He also noticed the cold beer, ice, and broken cooler in defendant's car.

Richard Burnett, an evidence technician with the patrol, at the request of Trooper Fitzgerald, took photographs of the vehicles and the scene. They showed Route J at the collision scene as a rural blacktop road with its center denoted by a broken white line painted on the surface. They also showed that east and westbound automobiles would be hidden from each other as they approached the crest of the hill. Pictures of the vehicles showed each to have sustained violent damage to the left corner and the front.

Appellant's first point is that this evidence is not sufficient to sustain conviction "in that there was no evidence of culpable negligence and * * * there was no competent evidence of the death of Jackie Lee Rhoades."

The argument with respect to alleged insufficiency of evidence of culpable negligence is that driving while drinking is not in and of itself culpable negligence, and that "the same could be said of passing at a blind spot on an unmarked road." The difficulty with appellant's argument is that it overlooks the thrust of all the evidence available in support of the verdict.

 From the evidence, a jury could properly infer that defendant had been drinking; that he was driving too fast for existing conditions and passed the Richardson car on the upward slope of a hill over which he could not see; that while thus on the wrong side of the road, he collided with an automobile approaching from over a blind hill on its proper side of the road; that the center of the road was marked by a white line; and that defendant's failure to stay on his proper side of the road under these circumstances was wanton, culpably negligent conduct which caused the collision. State v. Mayabb, Mo., 316 S.W.2d 609, 612–613[7, 8]; State v. Duncan, Mo., 316 S.W.2d 613, 616–617[4]; State v. Simler, 350 Mo. 646, 167 S.W.2d 376, 383[11]. See also State v. Burchett, Mo., 302 S.W.2d 9, a submissible case of manslaughter by culpable negligence where defendant passed on a hill in a no-passing zone; State v. Pennick, Mo., 364 S.W.2d 556, a submissible case on defendant's driving at 70–75 miles per hour across the center line on a viaduct; State v. Morris, Mo., 307 S.W.2d 667, a submissible case on high speed on a "curvy" road; and, from other jurisdictions, note that one who enters the wrong side of the road on an incline so steep he

cannot see over is guilty of negligence sufficient to support a conviction of manslaughter, State v. Rice, 58 N.M. 205, 269 P.2d 751; Commonwealth v. Waters, 148 Pa.Super. 473, 25 A.2d 756; Anno. 60 A. L.R.2d 214. The matter of drinking will not, of itself, support a manslaughter conviction but is a proper consideration on the question of culpable negligence in connection with other evidence, as in this case. State v. Morris and Mayabb, supra; State v. Feger, Mo., 340 S.W.2d 716; State v. Hughey, Mo., 404 S.W.2d 725; State v. Achter, Mo., 445 S.W.2d 318.

■■■ The argument with respect to alleged lack of competent evidence of the death of Jackie Lee Rhoades is that the only evidence of the death and cause of death was from a layman, the ambulance operator-funeral director, Lester Hutton. Appellant would support this argument by State v. Burchett, supra, holding that whether a person is in a state of shock as a result of injuries is a proper subject of expert testimony, and the witness from whom such testimony was sought in that case was not shown to be a person possessed of peculiar knowledge, wisdom, skill, information, or experience regarding the subject matter to be permitted to give his opinion. Appellant also cites State v. Simler, supra, where there was no direct proof of the cause of death, and there was no evidence to show injuries or that they were fatal. Neither case is in point because there were circumstances from which the death of Jackie Lee Rhoades could be inferred as a result of the collision, and witness Hutton was shown to be more than a layman with respect to those matters upon which his testimony was accepted, and his observations were such that he could make and relate them to the jury. An undertaker's statement that a person is dead is substantial evidence of the fact of death. Jackie Lee Rhoades was well and driving his automobile immediately prior to the head-on collision; immediately after, he was found not breathing, moving or talking. Mr. Hutton, an ambulance operator and funeral director with 10-years' experience as a coroner, described injuries that he or any layman could feel, crushed ribs and chest and fractured skull, as well as outward contusions which he or any layman could see. From such circumstances, the jury could determine that the death was caused by the collision resulting from defendant's culpable negligence. Direct in point is State v. Morris, supra, where the coroner's death certificate was excluded because he was a dentist rather than a doctor, but his description of the injuries as he found them at the collision scene and the state of life of the victim immediately prior to the collision were substantial evidence from which the jury could infer that the deceased met death as a result of the collision and immediately produced death.

■■ In closing, the prosecuting attorney argued: " * * * Now, this is a case that you should consider very deeply, as all criminal cases; that you have the province of the punishment; and I think you should use it wisely and discretely (sic). You should make a warning to Robert Eugene Carter, not to come back to Macon County, and you should warn him that we—MR. BELT: (interrupting) Your Honor—MR. FOLEY: (interrupting)—feel that he is guilty of manslaughter—MR. BELT: (interrupting) Does he have to be convicted because he is not a resident of Macon County? MR. FOLEY: That is not a statement, but, was taken out of context, your Honor. THE COURT: Gentlemen, stay within the evidence of this case. MR. BELT: There is no evidence of the residence of the defendant. There is no evidence he is a non-resident. THE COURT: The jury will remember the evidence in the case, and I think the jury will remember what the Prosecuting Attorney said with reference to residence. I am overruling your objection on that ground, Mr. Belt. Now, Mr. Foley, proceed. * * * MR. FOLEY: I want this jury to understand, I don't want you to convict him for drinking, and I don't want you to convict for what these witnesses said to-

day, but I want this to be a warning to Robert Eugene Carter—MR. BELT: (interrupting) Your Honor, I object again, and ask for a mistrial. MR. FOLEY: This is the defendant in this case, your Honor. THE COURT: I'm not sure what you are objecting to, Mr. Belt. I'm not sure that I understand. MR. BELT: The defense (sic) is wanting the jury to warn the defendant to stay out of Macon County. Now, if that is a proper argument, if that is a proper attitude, it is designed to prejudice the jury against this defendant. THE COURT: (To Mr. Belt) I think you prejudiced it by your remarks about the residence of the defendant. The jury will recall the evidence, but the Court recalls no evidence as to the residence of the defendant. Now, Mr. Foley, be careful in what you wish, within the evidence, to suggest that the jury do. Mr. Belt, the Motion for a Mistrial is denied. Go ahead, Mr. Foley."

Appellant complains that this was prejudicial argument because it was a request to the jury to convict not for drinking or what the witnesses said, but as a warning not to come back to Macon County and as a deterrent to defendant rather than to others.

It is difficult, due, in part, to the interruptions, to determine the true sense of the argument, but it does not appear as the alleged prejudicial warning by the prosecutor to stay out of Macon County because the only reference to nonresidency was injected by defense counsel. The mention of deterrence is not coupled with repetitious references to past offenses, bad character, and criminal proclivities which made an argument on preventing further injury to society by the defendant prejudicial in State v. Mobley, Mo., 369 S.W.2d 576; but was, rather, the proper argument of the necessity of law enforcement as a deterrent to crime, State v. Turner, Mo., 320 S.

W.2d 579, and was properly within the discretion of the trial court in control of arguments. See State v. Williams, Mo., 419 S.W.2d 49, 51–53[1–3], where refusal of mistrial with respect to an argument for a long sentence to deter repetition by defendant was held to be within the discretion of the trial court in its control of arguments.

Appellant claims also that the court made prejudicial comments on the evidence in connection with rulings on the objections to the argument.

■ It is not unusual for a trial judge to explain a ruling on an objection to argument; and, in this instance, if the reason constitutes a comment on nonresidence, it is not error because it refers back to the interjection of nonresidency by defense counsel rather than to any specified evidence or representation of residency by the prosecutor. State v. Stewart, 278 Mo. 177, 212 S.W. 853, 857, cited by appellant in support of this contention, is not in point because its circumstances are dissimilar and it simply states the proposition that a trial judge cannot comment on the evidence or tell the jury what inference or conclusion should be drawn from the evidence.

Judgment affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

SEILER, P. J., HOLMAN, J., and McGUIRE, Special Judge, concur.

STORCKMAN, J., not sitting.